Green, J.
delivered the opinion of the court.
It appears from the pleadings and proof in this case, that the defendant Lashlee, became the administrator of the estate of James L. Sayles, late of Benton county, and that at the' May term of the circuit court for Benton county, he exhibited his petition, praying for the sale of said slaves. At the same term the court decreed that the sale should be made by the administrator. At the September term of said court, the administrator reported that he had made sale of said slaves, as directed, and the report being unexcepted to was confirmed; and it appearing to the court that the purchase money had been paid, it was ordered and decreed, that the title to said slaves be vested in the purchasers respectively. It appears *718 from the decree, that Elizabeth Sayles, became the purchaser at the sale aforesaid, of three slaves; Jesse for $560 00, Maria for $483 50, and Mary for $13 12$, making in all the sum of $1053 62$. Shortly after said sale, the said Elizabeth intermarried with Uriah Phifers. It appeai-s from the answer and proof, that the said Elizabeth did not, in fact pay for said slaves, but agreed that she would hold them as the property of the said Lashlee the administrator,, until they should be paid for, until which time, Lashlee might control the slaves as his own. Phifer understood all the facts in relation to this arrangement, before he intermarried with said Elizabeth, and always recognized the purchase money for the slaves as still due to Lashlee. The affair thus remained, until the existence of judgments, at the suit of other creditors, against the said Phifer and wife, induced the defendant Lashlee, to obtain from them a bill of sale for said slaves, Jesse and Maria, for the consideration of $1000, and which was executed by Phifer and his wife, the 13th of October 1836; to secure Lashlee in the payment of the said purchase money. The negroes were left in the possession of Phifer, and the bill of sale was never registered. The complainant, knowing that the purchase money was in fact never paid to Lashlee, by the said Elizabeth, or the said Phifer; and knowing also of the execution by them, of the said bill of sale of the 13th of October 1836, to Lashlee, procured from the said Phifer a bill of sale to himself for said negroes, for the consideration of $1000. This bill of sale was executed on the night of the 13th of January 1847, was proved the same night after ten o’clock, and was subsequently on the same night registered. When this bill of sale was executed, the parties were all in Camden, and the negroes were at the house of Phifer, some miles in the country. The defendant Lashlee, having been made acquainted with the said sale by Phifer to the complainant, on *719 the same night, without knowledge of Phifer or the complainant, went to the house of Phifer and told the said Elizabeth what was doing in Camden; and obtained from her possession of the slaves; whereupon, the complainant brought this bill to obtain possession of said slaves, insisting upon his registered legal title. The chancellor dismissed the bill. The complainant insists, in the first place that Lashlee ought not to be permitted to show, in opposition to the recitation of the-decree of the circuit court, that the price bid by Elizabeth Sayles, for said n<%roes was not in fact paid by her, that his report of the sale, and the decree thereon are conclusive upon him. This position is certainly correct so far as the liability of the administrator to the creditors and distributees of the-estate of Sayles is concerned. In a proceeding against him as administrator, for an account of the assets of his intestate’s estate, fie could not be heard to say that he had not received-the purchase money for these Hi aves. But as between the administrator and the purchaser of the property, this principle has no application. There is no rule of law, to prevent the administrator from advancing his own money to the estate, and permitting the purchaser to become his personal debtor. And if he do so, however irregular, and improper such a practice may be, certainly the purchaser who has thus been indulged, will not be permitted to discharge himself from all obligation to pay for the property to the administrator, because'the administrator may have rendered himself personally liable to the estate of his intestate therefor. We think, therefore, that it is clear from the proof, that Elizabeth Sayles was-the bona fide debtor of the defendant Lashlee, for the negroes at the time of her marriage; which debt Phifer was bound to pay. The next, and only remaining question is, whether the conveyance of Phifer and wife to Lashlee, was made in fraud of creditor's. — It is insisted* that the conveyance is- *720 fraudulent, because it is an absolute sale, and the possession remained with the vendors. The doctrine that if the property sold, remained in the possession of the vendor, the sale is per se fraudulent was overruled by this court, in the case of Callen vs. Thompson, (3 Yerg. Rep.,) where it is laid down, that such possession is only evidence of fraud and that the bona fidcs of the transaction may be shown by proof. We think, that any presumption of fraud from this circumstance, is sufficiently explained and repelled by the proof of fairness. Besides, the evidence shows that this bill of sale was Anly intended as a security for the unpaid purchase money, and was in fact, though absolute on its face, only a mortgage. And the possession of the property mortgaged, by the mortgagor, is no evidence of fraud, because it is consistent with the contract. Whenever, therefore, it shall be made to appear that a deed, absolute on its face, was intended by the parties as a mortgage only, the presumption of fraud tftat may have existed, by reason of the possession of the property by.the bargainor, instantly disappears. And such is this case. But it is insisted this deed is fraudulent, because the parties knew that there were judgments and executions against Phifer and his wife, and this deed was executed to prevent other creditors from seizing these negroes. It is certainly true, that if a debtor sell his property with a view to defeat the rights of his creditors, and the purchaser is cognizant of such intention, the sale is fraudulent and void. But a debtor is not prevented from preferring a creditor and securing his debt, in preference to the claims of other creditors; and a conveyance of his property, bona fide made, for such purpose, is valid. It is not made to hinder and delay creditors, but for the honest purpose of securing the payment of the debt of a favorite creditor.
We think, therefore, that the deed to the defendant, Lashlee, was bona fide made; that its existence, and the consideration *721 for which it was given, were known to Wiley at the time he took his deéd; and, therefore, he acquired no title by reason of the prior registration of his deed for the property.
Affirm the decree.